IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| PATRAIL BROWN, | ) | |
| | ) | No. 16 CV 7670 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Charles R. Norgle |
| v. | ) | |
| | ) | |
| SHERIFF MIKE KELLEY | ) | |
| Sheriff of Will County, et al | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**NOW COMES,** the Plaintiff, **PATRAIL BROWN**, by and through his attorneys, **ROBERT L. RASCIA**, and **RASCIA AND HIMEL LTD**, and complaining of the defendants; **THE WILL COUNTY SHERIFF'S OFFICE;** and **THE WILL COUNTY ADULT DETENTION FACILITY;** and **SHERIFF MIKE KELLEY** (Sheriff of Will County); and **CHIEF DEPUTY BRAD JOSEPHSON** (Warden of the Will County Adult Detention Facility); and **UNKNOWN CORRECTIONAL OFFICER NUMBER ONE** (A Correctional Officer at the Will County Adult Detention Facility); and **UNKNOWN CORRECTIONAL OFFICER NUMBER TWO** (A Correctional Officer at the Will County Adult Detention Facility); and **UNKNOWN MEDICAL STAFF NUMBER ONE** (A Member of the Medical Staff at the Will County Adult Detention Facility); and **UNKNOWN MEDICAL STAFF NUMBER TWO** (A Member of the Medical Staff at the Will County Adult Detention Facility); and **UNKNOWN MEDICAL STAFF NUMBER THREE** (A Member of the Medical Staff at the Will County Jail); he hereby submits his Second Amended Complaint.

## JURISIDICTION AND VENUE

1. This Court has subject matter jurisdiction to hear and adjudicate this cause pursuant to 28 U.S.C. Sec. §1343(a) and Sec. §1331 because the claims and issues in controversy arise under the Constitution and statutory laws of the United States of America, to wit, the defendant alleges that the various defendants committed violations of 42 U.S.C. §1983, under color of law, by depriving him of his freedom from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PLAINTIFF

3. Plaintiff, Patrail Brown, is a citizen of the State of Illinois, who is currently residing in the custody of the Illinois Department of Corrections at the Illinois River Correctional Facility at 1300 W Locust St, Canton, IL 61520. At all relevant times complained of herein Mr. Brown was an inmate held in the custody of the Will County Sheriff at the Will County Adult Detention Facility. Plaintiff Brown was taken into custody of the Will County Sheriff on March 8, 2016 and thereafter remained until he was remanded to the custody of the Illinois Department of Corrections on May, 5, 2016.

## DEFENDANTS

4. Upon information and belief, Sheriff Mike Kelley is a citizen of the State of Illinois, who is currently residing within the State. At all relevant times, Sheriff Kelley was a government official who was elected to serve as the highest ranking executive of the Will County Sheriff's Office.

5. Upon information and belief, Chief Deputy Brad Josephson is a citizen of the State of Illinois, who is currently residing within the State. At all relevant times, Chief Deputy Josephson was a government official who was appointed as warden of the Will County Adult Detention with responsibility to manage the correctional responsibilities Will County Adult Detention and the Will County Sheriff's Office.

6. The Will County Sheriff's Office is a unit of local government which is entrusted with the exclusive authority and responsibility for maintaining and operating the Will County Adult Detention Center, and which is physically located entirely within the territorial boundaries of Will County, Illinois, and the United States District Court for the Northern District of Illinois.

7. The Will County Adult Detention Center is a division of the Will County Sheriff's Office which is responsible for maintaining and operating a correctional facility (the Will County Adult Detention Center) where prisoners are detained and housed in custody of the Will County Sheriff. This correctional facility is physically located entirely within the territorial boundaries of Will County, Illinois, and the United States District Court for the Northern District of Illinois.

8. Upon information and belief, Unknown Correctional Officer Number One, is a citizen of the State of Illinois, who is currently residing within the State of Illinois. On or about March 16, 2016, this defendant, Unknown Correctional Officer Number One was employed as a correctional officer who was assigned to supervise the inmates in housing unit W-1 at the Will County Adult Detention Facility.

9. Upon information and belief, Unknown Correctional Officer Number Two, is a citizen of the State of Illinois, who is currently residing within the State of Illinois. During the period of time occurring between March 16, 2016 through May 5, 2016, this defendant, Unknown Correctional Officer Number Two was employed as a correctional officer who

was assigned to supervise the inmates in the medical housing unit at the Will County Adult Detention Facility.

10. Upon information and belief, Unknown Medical Staff Number One, is a citizen of the State of Illinois, who is currently residing within the State of Illinois. During the period of time occurring between March 8, 2016 through May 5, 2016, this defendant, Unknown Medical Staff Number One was responsible for monitoring, supervising, and performing the administration of prescribed medications to the inmates in housing unit W-1 at the Will County Adult Detention Facility.

11. Upon information and belief, Unknown Medical Staff Number Two, is a citizen of the State of Illinois, who is currently residing within the State of Illinois. On or about March 16, 2016, this defendant, Unknown Medical Staff Number Two, was responsible for providing medical care and treatment to the inmates in housing unit W-1 at the Will County Adult Detention Facility.

12. Upon information and belief, Unknown Medical Staff Number Three, is a citizen of the State of Illinois, who is currently residing within the State of Illinois. During the period of time occurring between March 16, 2016 through May 5, 2016, this defendant, Unknown Medical Staff Number Three, was responsible for providing medical care and treatment to the inmates in the medical housing unit at the Will County Adult Detention Facility.

## BACKGROUND ALLEGATIONS

13. Between the dates of March 8, 2016 and May 5, 2016 the plaintiff, Patrail Brown, was incarcerated in the custody of the Will County Adult Detention Facility.

14. Upon information and belief, during the time period that the defendant was incarcerated (between March 8, 2016 and May 5, 2016), there were never more than 900 other persons who were incarcerated at the Will County Adult Detention Facility as inmates in the

custody of the Will County Sheriff at the same time as the plaintiff.

15. Prior to his incarceration on May 8, 2016 the plaintiff was diagnosed with High Blood Pressure and Diabetes, for which he was prescribed a regimen of medications.

16. The Plaintiff continued to suffer from these medical conditions at all times throughout his period of his incarceration in the Will County Adult Detention Facility

17. Throughout the term of his incarceration at the Will County Adult Detention Facility the named defendants were personally notified and aware that the Plaintiff had been prescribed medications for these medical conditions, as evidenced by the fact that dosages of prescription medications were indeed administered to him at the jail.

18. Between March 8, 2016 and March 16, 2016 the Plaintiff was incorrectly administered a different medication than the medication that he was prescribed by his doctor.

19. On or about March 16, 2016 the plaintiff began to experience a general feeling of illness which he immediately complained of his feelings of illness too defendants Unknown Correctional Officer Number One, and Unknown Medical Staff Number Two, and he repeatedly requested for them to arrange for him to receive emergency medical treatment.

20. Despite the Plaintiff's repeated requests for emergency medical treatment (on March 16, 2016), a period of more than two hours transpired after the Plaintiff's initial complaints, during which he received no medical attention whatsoever, until the Plaintiff eventually lost consciousness and suffered a seizure.

21. As a result of the seizure the Plaintiff suffered a fall and which caused swelling, physical injury, and pain to his head, side, hip, and wrist.

22. When Plaintiff eventually regained consciousness his limbs and extremities were being immobilized and stabilized by Unknown Correctional Officer Number One, and he was being administered an oxygen mask by Unknown Medical Staff Number Two.

23. Shortly after the plaintiff had regained consciousness following his seizure he was transported to the medical housing unit of the Will County Adult Detention Center, where he was immediately locked in an enclosed cell for a 24 hour day without receiving any food, medicine, or medical treatment, during which time the Plaintiff suffered another seizure.

24. After approximately 24 hours the plaintiff was finally provided with a meal and an ibuprofen pill for his pain.

25. During the ensuing two or three week period of time the plaintiff was never visited by a medical professional.

26 After approximately two or three weeks the plaintiff was eventually visited by a nurse and shortly after that he was finally visited by a doctor on or about April 4, 2016

27. The doctor opined that the plaintiff had suffered seizures because he had been incorrectly administered the wrong medication by the jail medical staff.

28. The plaintiff's seizures were directly and proximately caused by the administration of the wrong medication, because he was denied the benefits of medically necessary diabetes and blood-pressure medications which he was properly prescribed, and because he simultaneously received a medically unnecessary dosage of an unknown and unprescribed medication.

29. The plaintiff's seizures were also directly and proximately caused by the failure to provide him with immediate medical care, after he began to complain of a general feeling of illness when he received the wrong medication.

30. The plaintiff also suffered severe injuries from a series of falls which were directly and proximately cause by his seizures, and the failure of jail staff to properly treat them.

31. The plaintiff has also suffered from a permanently recurring limitation of his physical mobility, and both temporary and permanently recurring episodes of pain and

discomfort, which were all directly and proximately caused by the failure to provide medical treatment for his seizures and his fall injuries.

## COUNT I
## SECTION §1983 CLAIM AGAINST
## SHERIFF MIKE KELLEY
## IN HIS INDIVIDUAL CAPACITY

32. At all relevant times Sheriff Mike Kelley was a member of the correctional staff of the Will County Adult Correctional Facility, as such, he was entrusted with the duty, authority, and responsibility to facilitate basic medical treatment to the plaintiff, Patrail Brown, without demonstrating deliberate indifference for his medical needs.

33. Upon information and belief, on or about March 16, 2016 defendant Kelley was personally notified and aware that Patrail Brown had suffered a seizure and been subsequently denied medical treatment.

34. Upon information and belief, on or before May 30, 2016 defendant Kelley was personally aware that Patrail Brown had still not yet received any medical attention whatsoever.

35. Upon information and belief, on or before April 4, 2016 defendant Kelley was personally aware that Patrail Brown had still not yet received a doctor visit.

36. Upon information and belief, between March 16, 2016 and April 4, 2016 defendant Kelley demonstrated deliberate indifference for the medical needs of the plaintiff, and thus breached his duty to facilitate basic medical care for Mr. Brown, by refusing to intervene to arrange for medical attention and treatment for the plaintiff's medical condition, and by discouraging other correctional staff members from arranging for such medical attention and treatment.

**COUNT II**
**SECTION §1983 CLAIM AGAINST**
**CHIEF DEPUTY BRAD JOSEPHSON**
**IN HIS INDIVIDUAL CAPACITY**

37. At all relevant times Chief Deputy Josephson was a member of the correctional staff of the Will County Adult Detention Facility, as such, he was entrusted with the duty, authority, and responsibility to facilitate basic medical treatment to the plaintiff, Patrail Brown, without demonstrating deliberate indifference for his medical needs.

38. Upon information and belief, on or about March 16, 2016 defendant Josephson was personally notified and aware that Patrail Brown had suffered a seizure and been subsequently denied medical treatment.

39. Upon information and belief, on or before May 30, 2016 defendant Josephson was personally aware that Patrail Brown had still not yet received any medical attention whatsoever.

40. Upon information and belief, on or before April 4, 2016 defendant Josephson was personally aware that Patrail Brown had still not yet received a doctor visit.

41. Upon information and belief, between March 16, 2016 and April 4, 2016 defendant Josephson demonstrated deliberate indifference for the medical needs of the plaintiff, and thus breached his duty to facilitate basic medical care for Mr. Brown, by refusing to intervene to arrange for medical attention and treatment for the defendant's medical condition, and by discouraging other correctional staff members from arranging for such medical attention and treatment.

**COUNT III**
**SECTION §1983 CLAIM AGAINST**
**UNKNOWN CORRECTIONAL OFFICER NUMBER ONE**
**IN HIS INDIVIDUAL CAPACITY**

42. At all relevant times Unknown Correctional Officer Number One (hereinafter UCO Number One) was a member of the correctional staff of the Will County Adult Detention

Facility, as such, he was entrusted with the duty, authority, and responsibility to facilitate basic medical treatment to the plaintiff, Patrail Brown, without demonstrating deliberate indifference for his medical needs.

43. On or about March 16, 2016, this defendant, UCO Number One was employed as a correctional officer who was assigned to supervise the inmates in housing unit W-1 at the Will County Adult Detention Facility.

44. On information and belief, between March 8, 2016 and March 16, 2016, UCO Number One was personally informed that the plaintiff had been administered the incorrect medication by jail medical staff.

45. On March 16, 2016 the defendant UCO Number One was personally informed by the plaintiff that he was experiencing general feelings of illness.

46. On March 16, 2016 the defendant UCO Number One personally observed the plaintiff suffer a seizure and fall.

47 Upon information and belief, on or before May 30, 2016, UCO Number One was personally aware that Patrail Brown had still not yet received any medical attention whatsoever.

48. Upon information and belief, on or before April 4, 2016, UCO Number One was personally aware that Patrail Brown had still not yet received a doctor visit.

49. Upon information and belief, between March 16, 2016 and April 4, 2016 UCO Number One demonstrated deliberate indifference for the medical needs of the plaintiff, and thus breached his duty to facilitate basic medical care for Mr. Brown, by refusing to intervene to arrange for medical attention and treatment for the defendant's medical condition, and by discouraging other correctional staff members from arranging for such medical attention and treatment.

**COUNT IV**
**SECTION §1983 CLAIM AGAINST**
**UNKNOWN CORRECTIONAL OFFICER NUMBER TWO**
**IN HIS INDIVIDUAL CAPACITY**

50. At all relevant times Unknown Correctional Officer Number Two (hereinafter UCO Number Two) was a member of the correctional staff of the Will County Adult Detention Facility, as such, he was entrusted with the duty, authority, and responsibility to facilitate basic medical treatment to the plaintiff, Patrail Brown, without demonstrating deliberate indifference for his medical needs.

51. During the period of time between March 16, 2016 through May 5, 2016, this defendant, UCO Number Two was employed as a correctional officer who was assigned to supervise the inmates in the medical housing unit at the Will County Adult Detention Facility.

52. Upon information and belief, between March 8, 2016 and March 16, 2016, the defendant UCO Number Two was personally informed that the plaintiff had been administered the incorrect medication by jail medical staff.

53. Upon information and belief, on or about March 16, 2016 the defendant UCO Number Two was personally notified and aware that Patrail Brown had suffered a seizure and been subsequently denied medical treatment.

54 Upon information and belief, on or before May 30, 2016, UCO Number Two was personally aware that Patrail Brown had still not yet received any medical attention whatsoever.

55. Upon information and belief, on or before April 4, 2016, UCO Number Two was personally aware that Patrail Brown had still not yet received a doctor visit.

56. Upon information and belief, between March 16, 2016 and April 4, 2016 UCO Number Two demonstrated deliberate indifference for the medical needs of the plaintiff, and thus breached his duty to facilitate basic medical care for Mr. Brown, by refusing to intervene to arrange for medical attention and treatment for the defendant's medical condition,

and by discouraging other correctional staff members from arranging for such medical attention and treatment.

## COUNT V
## SECTION §1983 CLAIM AGAINST
## UNKNOWN MEDICAL STAFF NUMBER ONE
## IN HER INDIVIDUAL CAPACITY

57. At all relevant times Unknown Medical Staff Member One (hereinafter UMS Number One) was a member of the correctional staff of the Will County Adult Detention Facility, as such, she was entrusted with the duty, authority, and responsibility to facilitate basic medical treatment to the plaintiff, Patrail Brown, without demonstrating deliberate indifference for his medical needs.

58. On or about March 16, 2016, this defendant, UMS Number One was responsible for monitoring, supervising, and performing the administration of prescribed medications to the inmates in housing unit W-1 at the Will County Adult Detention Facility.

59. On information and belief, between March 8, 2016 and March 16, 2016, UMS Number One incorrectly administered the wrong prescription medication to the plaintiff.

60. On information and belief, between March 8, 2016 and March 16, 2016, UMS Number One was personally aware that the plaintiff had been incorrectly administered the wrong prescription medication.

61 Upon information and belief, on or before May 30, 2016, UMS Number One was personally aware that Patrail Brown had still not yet received any medical attention whatsoever.

62. Upon information and belief, on or before April 4, 2016, UMS Number One was personally aware that Patrail Brown had still not yet received a doctor visit.

63. Upon information and belief, between March 16, 2016 and April 4, 2016 UMS Number One demonstrated deliberate indifference for the medical needs of the plaintiff,

and thus breached her duty to facilitate basic medical care for Mr. Brown, by providing the wrong medications to Patrail Brown, and by refusing to intervene to arrange for medical attention and treatment for the defendant's medical condition, and by discouraging other correctional staff members from arranging for such medical attention and treatment.

## COUNT VI
### SECTION §1983 CLAIM AGAINST UNKNOWN MEDICAL STAFF NUMBER TWO IN HER INDIVIDUAL CAPACITY

64. At all relevant times Unknown Medical Staff Number Two (hereinafter UMS Number Two) was a member of the correctional staff of the Will County Adult Detention Facility, as such, she was entrusted with the duty, authority, and responsibility to facilitate basic medical treatment to the plaintiff, Patrail Brown, without demonstrating deliberate indifference for his medical needs.

64. On or about March 16, 2016, this defendant, UMS Number Two, was responsible for providing medical care and treatment to the inmates in housing unit W-1 at the Will County Adult Detention Facility.

65. On information and belief, between March 8, 2016 and March 16, 2016, UMS Number Two was personally informed that the plaintiff had been administered the incorrect medication by jail medical staff.

66. On March 16, 2016, the defendant, UMS Number Two was personally informed by the plaintiff that he was experiencing general feelings of illness.

67. On March 16, 2016, the defendant, UMS Number Two, personally observed the plaintiff suffer a seizure and fall.

68 Upon information and belief, on or before May 30, 2016, UMS Number Two, was personally aware that Patrail Brown had still not yet received any medical attention whatsoever.

69. Upon information and belief, on or before April 4, 2016, UMS Number Two, was personally aware that Patrail Brown had still not yet received a doctor visit.

70. Upon information and belief, between March 16, 2016 and April 4, 2016 UMS Number Two, demonstrated deliberate indifference for the medical needs of the plaintiff, and thus breached her duty to facilitate basic medical care for Mr. Brown, by refusing to intervene to arrange for medical attention and treatment for the defendant's medical condition, and by discouraging other correctional staff members from arranging for such medical attention and treatment.

### COUNT VII
### SECTION §1983 CLAIM AGAINST
### UNKNOWN MEDICAL STAFF NUMBER THREE
### IN HER INDIVIDUAL CAPACITY

71. At all relevant times Unknown Medical Staff Number Three (hereinafter UMS Number Three) was a member of the correctional staff of the Will County Adult Detention Facility, as such, she was entrusted with the duty, authority, and responsibility to facilitate basic medical treatment to the plaintiff, Patrail Brown, without demonstrating deliberate indifference for his medical needs.

72. During the period of time between March 16, 2016 through May 5, 2016, this defendant, UMS Number Three was employed as a medical staff member who was responsible for providing medical care and treatment to the inmates in the medical housing unit at the Will County Adult Detention Facility.

73. Upon information and belief, between March 8, 2016 and March 16, 2016, the defendant UMS Number Three was personally informed that the plaintiff had been administered the incorrect medication by jail medical staff.

74. Upon information and belief, on or about March 16, 2016 the defendant UMS Number Three was personally notified and aware that Patrail Brown had suffered a seizure

and been subsequently denied medical treatment.

75. Upon information and belief, on or before May 30, 2016, UMS Number Three was personally aware that Patrail Brown had still not yet received any medical attention whatsoever.

76. Upon information and belief, on or before April 4, 2016, UMS Number Three was personally aware that Patrail Brown had still not yet received a doctor visit.

77. Upon information and belief, between March 16, 2016 and April 4, 2016 UMS Number Three demonstrated deliberate indifference for the medical needs of the plaintiff, and thus breached her duty to facilitate basic medical care for Mr. Brown, by refusing to intervene to arrange for medical attention and treatment for the defendant's medical condition, and by discouraging other correctional staff members from arranging for such medical attention and treatment.

## COUNT VIII
### SECTION §1983 MONELL CLAIM AGAINST SHERIFF MIKE KELLY AND THE WILL COUNTY SHERIFF'S OFFICE IN THEIR OFFICIAL CAPACITY

78. The allegations set forth in paragraphs 32 through 36 are hereby adopted for paragraphs 78 through 82 as if set forth herein verbatim.

82. At all relevant times Sheriff Mike Kelly was the highest ranking member of the correctional staff of the Will County Adult Correctional Facility, as such, he had final policymaking authority over the provision and availability of medical treatment for the inmates at the jail.

83. Sheriff Kelley also had virtually unfettered authority over the hiring and firing of staff members and outside vendors at the jail.

84. In this official capacity Sheriff Kelley implemented a pattern and practice of deliberate indifference to the medical needs of the inmates under his supervision, based upon the

following failures and wanton omissions:

.

    a.    failing to implement a system with appropriate safeguards to ensure that inmates received the correct prescription medications

    b.    failing to provide adequate medical staffing.

    c.    failing to adequately train his correctional staff to recognize and respond to medical emergencies in the case of inmates with seizures and fall injuries or other serious medical conditions.

    d.    using explicit and implicit means, such as reprimand and promotion, to discourage staff from arranging for emergency medical treatment for inmates, while simultaneously rewarding those staff members who did comply with his expectations to withhold such treatment.

## COUNT IX

### SECTION §1983 MONELL CLAIM AGAINST CHIEF DEPUTY BRAD JOSEPHSON AND THE WILL COUNTY ADULT DETENTION CENTER IN THEIR OFFICIAL CAPACITY

85.    The allegations set forth in paragraphs 37 through 41 are hereby adopted for paragraphs 85 through 89 as if set forth herein verbatim.

90    At all relevant times Chief Deputy Josephson was the correctional staff member entrusted with the most significant degree of oversight and supervision of the management of the Will County Jail, as such, he had final policymaking authority over the provision and availability of medical treatment
for the inmates at the jail.

91.    Chief Deputy Josephson also had virtually unfettered authority over the hiring and firing of staff members and outside vendors at the jail.

92.    In this official capacity Chief Deputy Josephson implemented a pattern and practice of deliberate indifference to the medical needs of the inmates under his supervision, based upon the following failures and wanton omissions:

    a.    failing to implement a system with appropriate safeguards to ensure that inmates received the correct prescription medications.

    b.    failing to provide adequate medical staffing.

    c.    failing to adequately train his correctional staff to recognize and respond to medical emergencies in the case of inmates with seizures and fall injuries or other serious medical conditions.

    d.    using explicit and implicit means, such as reprimand and promotion, to discourage staff from arranging for emergency medical treatment for inmates, while simultaneously rewarding those staff members who did comply with his expectations to withhold such treatment.

**WHEREFORE**, the Plaintiff, **PATRAIL BROWN**, requests judgment in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), against the defendants, together with the costs of this suit, together with the attorney fees associated with the prosecution of this lawsuit as authorized in 42 U.S.C. 1983.

S/Robert L. Rascia/October 10, 2016
**ROBERT L. RASCIA, ARDC No. 6184470**
Attorney for the Plaintiff
Rascia & Himel, Ltd.
650 N. Dearborn Ste 700
Chicago, IL 60654
312-994-9100 Office
312-994-9105 Fax
rrascia@rascia-himel.com; Email